# In the United States Court of Federal Claims

No. 24-1966
Filed: May 6, 2026
FOR PUBLICATION

<table>
<tr><td>

**ASG SOLUTIONS CORPORATION DBA AMERICAN SYSTEMS GROUP,**

*Plaintiff,*

**v.**

**UNITED STATES,**

*Defendant.*

</td></tr>
</table>

*David S. Demian*, Finch, Thornton, & Baird LLP, San Diego, CA, for the plaintiff.

*Anna B. Eley*, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, ASG Solutions Corp., dba American Systems Group ("ASG"), was awarded an Indefinite-Delivery/Indefinite-Quantity ("IDIQ") task order in 2022 by the defendant, acting through the Department of the Navy ("Navy"), to provide engineering and program-management support services to the Naval Facilities Engineering Systems Command Southeast ("NAVFAC SE") at the Naval Air Station ("NAS") in Jacksonville, Florida. After six months, the Navy terminated ASG's task order for default. In 2023, ASG filed certified claims with the contracting officer for wrongful termination for default, breach of contract, and breach of the covenant of good faith and fair dealing.

After the contracting officer rejected its claims, ASG filed a complaint in this court (Case No. 23-1029) under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101 *et seq.* ASG challenged the termination for default and alleged that the Navy had breached the contract and the covenant of good faith and fair dealing. On cross-motions for summary judgment, ASG was found to have failed to perform the task order, and the termination for default under FAR 52.249-8 and 49.402-3(f) was upheld. *ASG Sols. Corp. v. United States*, 170 Fed. Cl. 485 (2024). ASG appealed the adverse judgment.

On November 27, 2024, while its appeal was pending, ASG filed this complaint, again alleging that NAVFAC SE wrongfully and in bad faith terminated ASG's task order for default (ECF 1 at ¶ 6.) The complaint largely mirrors the 2023 complaint, but ASG adds an allegation that the contracting officer's memorandum requesting that the task order be terminated for

default is "of suspect fraudulent origin," due to the memorandum's failure to comply with the Navy Correspondence Manual. (*Id*. at ¶ 22.)  The complaint alleges that "[i]n light of these policy deviations, there is genuine concerns whether this document, which was first presented on March 7, 2024, on the eve of oral argument [in Case No. 23-1029] on March 12, 2024 was indeed prepared on the date typed on that document, and therefore prior to [the termination for default] on April 4, 2023, as required by law or fraudulently claimed as such when it was not." (*Id*. at ¶ 23.)

On December 15, 2025, the Federal Circuit affirmed the summary judgment upholding the termination for default and dismissing the July 2023 complaint.  *ASG Sols. Corp. v. United States*, No. 2024-1755, 2025 WL 3627729 (Fed. Cir. Dec. 15, 2025), *reh'g and reh'g en banc denied* (Mar. 3, 2026).

The defendant moves to dismiss the November 2024 complaint, arguing that after receiving a final judgment on the merits of its earlier complaint, ASG is precluded from relitigating those issues.  The issues presented in this complaint are identical to those litigated in ASG's first complaint and were necessary to the judgment in the original action.  ASG had a full and fair opportunity to litigate the issues in that first action.  ASG is therefore barred by issue preclusion from relitigating its claim.  The complaint is dismissed under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for failure to state a claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2019, ASG, a provider of professional-support services for federal agencies, along with more than 2,400 other entities, was awarded the Seaport Next Generation Multiple Award, IDIQ Contract, No. N0017819D7175 ("Seaport NxG Contract").  (ECF 1-2 at 12.)  Under the Seaport NxG Contract, various Navy components would procure a variety of professional-support services.

On August 25, 2022, ASG submitted a proposal in response to a solicitation for task order No. N6945022F3005 under the Seaport NxG Contract.  (*Id*. at 46.)  Under the task order, the contractor would provide technical support services at NAS Jacksonville for NAVFAC SE's

---

[1] The facts outlined are drawn from the complaint and exhibits in support of the complaint. When reviewing a motion to dismiss, a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  A court is not "'limited to the four corners of the complaint'" in resolving disputed facts and may review evidence outside the pleadings, including "'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur S. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).  Judicial notice is taken of exhibits, briefs, and the transcript of oral argument in the first complaint.

Design and Construction Business Line.  The task order was to begin in October 2023.  (*Id.* at 19.)

Under the solicitation, offerors were to assemble a "team" to "provide expert advice and assistance services" on various NAVFAC SE-supported projects.  (*Id.* at 47.)  With respect to this team, the solicitation noted that:

> [a]t the time of initial contract award, the Government anticipates a staff of four (4) Architects, four (4) Mechanical Engineers, four (4) Electrical Engineers, two (2) Civil Engineers, two (2) Structural Engineers, one (1) Fire Protection Engineer, one (1) Cost Engineer, and two (2) Supervisors.

(*Id.*)

The solicitation identified this "anticipated staff" of 20 professionals as the "base/minimum" level of service required under the task order.  (*Id.*)  Other provisions of the solicitation were consistent with these requirements.

As part of its proposal, ASG submitted a proposed 20-member team consisting entirely of senior-level, accredited professionals with advanced degrees.  Although the list included the specific qualifications of the individuals, it did not include the name of any of the individuals proposed.  ASG accompanied its proposed team with the proposed cost associated with employing each team member.  On September 15, 2022, the contracting officer requested that ASG "confirm that [it] underst[ood] the technical experts submitted after award must meet the additional requirements proposed" in ASG's proposal, and ASG responded simply, "[y]es."

On September 28, 2022, ASG was awarded the task order.  After being awarded the task order, ASG struggled to assemble its team of professionals.  On October 3, 2022, the date by which ASG had to submit resumes for its 20 team members, ASG submitted only two resumes. Between October 6, 2022, and November 9, 2022, ASG submitted eight additional resumes.  Of the 10 resumes submitted by November 9, 2022, four were rejected by NAVFAC SE because the professionals lacked required licenses or possessed inadequate experience in comparison to the senior-level team members proposed by ASG.  Six resumes were accepted, but four of these six professionals declined ASG's offer, did not report to work, or quickly resigned.   As of November 9, 2022, ASG only had two professionals available to work under the task order.

On November 1, 2022, the contracting officer sent ASG a letter of concern notifying ASG that it was not meeting the requirement of the task order by failing to deliver adequate and timely resumes.  Between November 18 and November 20, 2022, ASG submitted three additional resumes to NAVFAC SE, but none of the three was hired.

On December 5, 2022, NAVFAC SE issued a cure notice to ASG, asserting that ASG's inability to meet its obligations endangered performance of the task order and could justify termination for default.  NAVFAC SE noted that ASG had submitted only nine resumes that met the level of employee qualifications required.  NAVFAC SE informed ASG that unless it cured

3

this failure within 10 calendar days, NAVFAC SE could terminate the task order for default under FAR 52.249-8.

On January 13, 2023, ASG provided an additional resume, which NAVFAC SE accepted. On January 20, 2023, ASG provided two more resumes, but neither individual was hired.

Also on January 20, 2023, NAVFAC SE issued a show cause notice based on ASG's failure to comply with its obligations to propose and assemble team members meeting the qualifications of the team members it had proposed.  The notice referenced a meeting held at NAS Jacksonville on January 5, 2023, at which ASG's president allegedly acknowledged that ASG "cannot meet" the commitments included in its proposal.  This statement, the notice explained, constituted an anticipatory repudiation and abandonment of ASG's contractual obligations.  The notice gave ASG an opportunity to explain why its "failure to perform arose from causes beyond [its] control."  Thereafter, on March 10, 2023, ASG submitted an additional resume, and NAVFAC SE accepted it.

On April 4, 2023, NAVFAC SE terminated the task order for default.  The contracting officer concluded that ASG was required under the task order to provide the Navy with, at a minimum, a team of 20 professionals, and ASG had failed to supply such a team.  The contracting officer further noted that ASG had provided a team of only five of the 20 required professionals at the halfway point of the task order.  The contracting officer rejected ASG's position that unforeseen labor-market conditions prevented it from recruiting professionals because ASG either knew or should have known of labor-market conditions before submitting its proposal.

While performing under the task order, ASG submitted six invoices.  ASG submitted three certified claims to the contracting officer seeking payments for the sums due to it.  On January 9, 2023, ASG submitted its first certified claim, seeking the combined amount of its October and November 2022 invoices.  It submitted a second certified claim on March 8, 2023, seeking the combined amount of its December 2022, January 2023, and February 2023 invoices.  On April 18, 2023, the contracting officer notified ASG that he had not made a final decision on the claim submitted in January 2023 but would do so by June 30, 2023.  The contracting officer noted that the task order had been terminated for default on April 4, 2023, and NAVFAC SE's re-procurement with another contractor could result in liability for ASG.  On May 4, 2023, ASG submitted a third certified claim, which sought the combined total of its invoices from March 2023 to April 5, 2023.

The contracting officer issued the first decision on ASG's claims on June 28, 2023, addressing the March and May claims.  The decision on the March claim explained that ASG had been paid $156,396.80 for the services ASG had rendered, and the contracting officer denied the rest of the claim.  The decision on the May claim explained that ASG had been paid $77,812.85 for services rendered, and the contracting officer denied the remainder.  In both cases, the contracting officer justified the partial payments under the task order.  On December 1, 2023, the contracting officer denied ASG's claim in its entirety because ASG had "failed to deliver the 20 [facilities technical experts] required by the task order."

4

After its task order was terminated for default, ASG filed its first complaint in July 2023. The complaint alleged first that the termination for default was improper, and that ASG was entitled to damages or, in the alternative, a conversion to a termination for convenience. The complaint also alleged that the defendant had breached the Jacksonville task order by failing to pay ASG under the firm fixed-price contract and breached the implied covenant of good faith and fair dealing by hindering ASG's performance. ASG moved for judgment on the pleadings in November 2023 and for summary judgment in December 2023. The defendant cross-moved for summary judgment in February 2024.

On March 7, 2024, attached to its reply brief on the motions for summary judgment, the defendant filed a copy of the contracting officer's memorandum, dated March 17, 2023, to the Navy's chief of contracting requesting ASG's task order be terminated for default ("the termination-request memo"). The termination-request memo summarized the events underpinning the contracting officer's request, including the solicitation of the task order, ASG's failure to adhere to the task order's specifications, the issuance of the letter of concern, cure notice, and show cause notice, and ASG's continued failure to perform. The termination-request memo also reviewed the factors the contracting officer considered in proposing to terminate the task order for default.

Oral argument on the parties' motions was held on March 12, 2024, less than one week after the Navy had provided the termination-request memo. The plaintiff objected to the belated submission of the termination-request memo and argued that it not be considered in resolving the motions. (Case No. 23-1029, ECF 30 at 8:14-24, 9:23-10:4.) ASG opted against seeking to delay the proceedings to allow for further factual development on the termination-request memo (*id*. at 9:1-8) because the delay would further injure ASG. At the conclusion of the argument, the parties were given two weeks to settle the dispute.

On March 29, 2024, when the parties did not reach a settlement, summary judgment was granted to the defendant. The court concluded that: (1) the task order required ASG to compose and maintain a team of 20 professionals who met the qualifications proposed by ASG to assist NAVFAC SE in performing the task order; (2) the task order was neither a personal services nor an improperly executed time and materials contract; and (3) NAVFAC SE correctly effected the termination in accordance with the FAR. *ASG Sols.*, 170 Fed. Cl. at 497, 502, 505. On April 25, 2024, ASG appealed that decision to the Federal Circuit.

On July 14, 2023, ASG submitted its fourth certified claim seeking to recover damages accruing from the bad faith and wrongful termination of the task order. On December 1, 2023, the contracting officer issued a final decision rejecting that claim.

On November 27, 2024, while its appeal was still pending in the Federal Circuit, ASG filed this second complaint. ASG again alleges that "NAVFAC SE did not have adequate grounds to [terminate for default] the Jacksonville Contract." (ECF 1 at ¶ 13.) This second complaint repeats the allegations from the first complaint that the default termination was motivated by personal animus. (*Id*. at ¶¶ 15-21.)

This second complaint adds the allegation, not included in ASG's first complaint, that the termination-request memo, which ASG only saw when it was filed on March 7, 2024, was fraudulently manufactured. (*Id.* at ¶¶ 22-23.) ASG alleges that if this memorandum is fraudulent and was not prepared before ASG was terminated, the termination for default was improper. (*Id.* at ¶ 23.) ASG alleges that the termination-request memo is fraudulent for eight reasons: (1) it was not accompanied by any transmitting email(s); (2) it does not comply with the Department of the Navy's Correspondence Manual; (3) the contracting officer's digital signature is missing the date and time stamp; (4) the copy quality shows grey marks that ASG alleges indicate redactions; (5) the signature page is a stand-alone page separate from the body of the memorandum; (6) the memorandum does not contain page numbers; (7) the memorandum references the wrong Seaport NxG contract number; and (8) the contracting officer hand-signed and hand-dated the request, even though all prior correspondence with ASG was digitally signed. (*Id.* at ¶ 22.) ASG further alleges that the memorandum admits "that it was motivated by its subjective perception of ASG as 'combative' and 'argumentative.'" (*Id.* at ¶ 24.) This admission is evidence of the Navy's intent to harm ASG in retaliation for purported combative conduct and the absence of a contractual reason to terminate ASG. ASG thus alleges the purported reasons for the termination were a pretext. (*Id.*) ASG seeks damages for the wrongful, bad-faith termination of the task order and the conversion of the termination for default to a termination for convenience. (*Id.* at pg. 10.)

On January 8, 2025, ASG's November 2024 complaint was stayed pending the Federal Circuit's decision in the appeal of the judgment in the first case. (ECF 8.)

On December 15, 2025, the Federal Circuit affirmed the decision in the first case, concluding that (1) "the government's interpretation of the task order is clearly more reasonable than ASG's"; (2) the task order was not an illegal personal services contract; and (3) "the government reasonably concluded that ASG had defaulted on the contract, and that the termination for default was not simply a ruse designed to enable the Navy to escape an improvident contract." *ASG Sols. Corp. v. United States*, No. 2024-1755, 2025 WL 3627729 (Fed. Cir. Dec. 15, 2025). On March 3, 2026, ASG's motion for panel rehearing or rehearing en banc was denied, and the mandate was issued on March 10, 2026.

On March 16, 2026, the stay in this was vacated. The defendant moved to dismiss on April 6, 2026, arguing that the complaint is barred by the doctrine of issue preclusion. ASG responded on April 20, 2026, and the defendant replied on April 27, 2026. Oral argument is not necessary to resolve the motion.

## II.    JURISDICTION

The Tucker Act, 28 U.S.C. § 1491(a), vests in the Court of Federal Claims jurisdiction over claims for money damages against the United States:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or

implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Court of Federal Claims has jurisdiction over claims for breach of contract founded upon an express contract with the United States. *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996). ASG's claim is founded on an express contract with a federal agency.

A court may hear a claim under the CDA only if that claim has been "submitted to the relevant contracting officer," and the contracting officer has "issued a final decision on that claim." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015). A claim submitted to a contracting officer must provide a "'clear and unequivocal statement that gives the contract officer adequate notice of the basis and amount of the claim.'" *Id.* (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)). ASG has submitted its claims to the contracting officer, who has issued final decisions on those claims.

## III.    STANDARD OF REVIEW

The defendant has moved to dismiss the complaint for failure to state a claim under RCFC 12(b)(6). Dismissal for failure to state a claim upon which relief can be granted "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

In considering dismissal under RCFC 12(b)(6), a court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiffs are entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). A court is allowed to consider not only "the allegations in the complaint, [but] may also look to matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quotation omitted).

## IV.    DISCUSSION

The defendant argues that the doctrine of issue preclusion bars ASG's November 2024 complaint. According to the defendant, the March 2024 summary judgment determined that the Navy's termination of ASG's task order for default was consistent with the contract and the law. The defendant argues that this second complaint seeks to relitigate the legality of the termination for default, and the doctrine of issue preclusion forecloses such an effort.

ASG responds that it did not receive a full and fair opportunity to litigate the merits of the termination for default because the termination-request memo was fraudulently manufactured, and the March 2024 summary judgment was based on "a manipulated administrative record." (ECF 15 at 8.) Because the record in the first case was manipulated with a document of doubtful

7

authenticity, ASG argues, it did not have a genuine opportunity to be heard, and issue preclusion does not apply to bar this complaint.

To invoke issue preclusion, the party asserting the defense must show that: (1) the issue at stake is identical to one in the prior proceeding; (2) the issue was actually litigated in that proceeding; (3) the prior determination of the issue was a critical and necessary part of the earlier judgment; and (4) the party facing preclusion had a full and fair opportunity to litigate that issue. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir. 2013). Issue preclusion does not require that the claims in the two suits be identical; rather, the application of issue preclusion focuses on whether the specific issue of law or fact has previously been fully litigated. *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000).

ASG's two complaints raise identical legal issues. In 2023, ASG alleged that the Navy had terminated ASG in bad faith, out of personal animus, and in retaliation for ASG's refusal to perform tasks not required by the task order. *ASG Sols. Corp. v. United States*, No. 23-1029C, ECF 1 at ¶¶ 85-114. ASG alleged that, until its termination, it had fully performed under the task order, and the contracting officer did not and could not have had a basis to believe that ASG would not continue to perform under the task order. *Id.* at ¶¶ 119-125. The Navy responded by disputing ASG's interpretation of the requirements of the task order, arguing it had not performed fully. At its heart, the dispute raised by ASG's initial complaint was one of contract interpretation.

In its November 2024 complaint, ASG again alleges it was terminated in bad faith. Count I alleges that NAVFAC SE hindered ASG's performance and refused to cooperate. (ECF 1 at ¶¶ 28-33.) ASG alleges "the conduct of NAVFAC SE including the arbitrary, capricious, and malicious issuance of [the termination for default] was part of a continuous course of bad faith conduct specifically intended to harm ASG and [its owner]." (*Id.* at ¶ 34.) ASG now relies on the belatedly produced termination-request memo as additional evidence of bad faith, but the legal issue on which the case turns remains the same: what did the contract require. On that issue, there is no distinction between the first and second complaints.

ASG had a full and fair opportunity to litigate the questions of law that its initial complaint presented. On summary judgment, the defendant's interpretation of the task order was found to be the best reading, and ASG had admittedly failed to meet its contractual requirements under that reading of the contract. ASG's performance deficiencies were found to have started soon after the task order was awarded and persisted until termination. Thus, the Navy could reasonably conclude that ASG would not correct its deficiencies and complete the work. *ASG Sols.*, 170 Fed. Cl. at 507-08.

The Federal Circuit affirmed, holding that the government "reasonably concluded that ASG had defaulted on the contract, and that the termination for default was not simply a ruse designed to enable the Navy to escape an improvident contract." *ASG Sols.*, 2025 WL 3627729, at *3. These determinations establish that ASG was not terminated in bad faith. Because the determination of whether ASG was terminated in bad faith relied on an interpretation of the contract, which is a question of law, there is nothing further to litigate.

The termination-request memo could not have meaningfully changed the outcome of the earlier case because longstanding precedent established the basic rule that whatever reason an agency initially gives to support a termination for default, that termination will be upheld when any valid basis existed at the time of termination. *See*, *e.g.*, *Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d 1173, 75 (Fed. Cir. 1994); *Joseph Morton Co., Inc. v. United States*, 757 F.2d 1273, 1277 (Fed. Cir. 1985). This rule is a corollary to the fact that courts review contract terminations under the CDA without deference, so the agency's initial decision gets reviewed de novo. 41 U.S.C. § 7103(e); *Schneider Elect. Bldgs. Americas, Inc. v. United States*, 163 Fed. Cl. 708, 715 (2023).

To sidestep the earlier adverse judgment, ASG tries to manufacture questions surrounding the termination-request memo. The distinction between ASG's first and second complaints is whether the Navy implemented the termination for default correctly, as required by FAR 49.402-3(f). The termination-request memo was irrelevant to every other issue raised in both complaints and cannot overcome the application of issue preclusion, except on a single issue: whether the Navy adhered to the procedural requirements to terminate ASG for default. *See ASG Sols.,* 170 Fed. Cl. at 507.

FAR 49.402-3(f) requires contracting officers to consider seven enumerated factors in deciding to terminate a contractor for default. At its core, ASG's argument boils down to a claim that the defendant committed fraud on the court by creating the termination-request memo to cover up the lack of justification that would have existed in the record without that memorandum. ASG argues that its allegation regarding the termination-request memo supports its argument that it should be allowed to proceed here. It asserts that the memorandum was "designed to dupe the [c]ourt into finding the allegations of bad-faith and predetermined [termination for default] [ ] lacked merit." (ECF 15 at 9.) ASG contends the memorandum reveals a pretextual ground for termination and argues that it should be allowed to proceed to show the termination here was made in bad faith and not for legitimate, if flawed or erroneous reasons. (*Id*.)

There are several problems with ASG's reliance on the allegedly bogus termination-request memo. First, as noted in the summary judgment decision, 170 Fed. Cl. at 508, the evaluation by the contracting officer of the seven FAR 49-402(f) factors is not a prerequisite to a valid termination for default. *DCX, Inc. v. Perry*, 79 F.3d 132, 135 (Fed. Cir.), *cert. denied*, 519 U.S. 992 (1996). Second, a defaulting contractor, like ASG, has no right to enforce this FAR provision. *Id*. Thus, the memorandum was not central to the rejection of ASG's earlier complaint. Instead, the outcome of the earlier complaint was largely predicated on the existence, in the record, of the detailed facts that are restated or summarized in the memorandum. It was not the memorandum itself that supported the default termination, but the reality that the memorandum merely reflected what had occurred. The memorandum merely outlined the contracting officer's decision to terminate the task order for default and summarized ASG's performance failures, all of which were found elsewhere in the record. (*See* ECF 1-2 at 133-34, 142-43; 164-65) (also filed in *ASG Sols. Corp. v. United States*, No. 23-1029C, ECF 17-3 at 397-98, 406-07, 573-74).

9

Regardless of whether the termination-request memo was written and sent on its purported date, complied with Navy formatting requirements, or contained improper motivations, the outcome of ASG's first complaint already determined that the termination for default rested on and was consistent with the terms of the contract.  A challenge to the legitimacy of and the motivations behind the memorandum does not entitle ASG to file a second complaint raising the same challenges presented by its first complaint. [2]

## V.    CONCLUSION

Because the issues at stake here are identical to those that were or could have been presented during consideration of the plaintiff's first complaint, the issues were necessary to the judgment in the first action and were actually litigated, and the plaintiff had a full and fair opportunity to litigate the issues in the prior proceeding, the plaintiff is precluded from making its claim under the doctrine of issue preclusion.

The defendant's motion to dismiss under RCFC 12(b)(6) is granted.  A separate order will be filed concurrently with this opinion directing the entry of judgment.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**

---

[2] If ASG believes the court was "dupe[d]," (ECF 15 at 9), the appropriate remedy is to seek relief from the judgment under RCFC 60(b)(3), not to file a new complaint.  RCFC 60(b)(3) allows a party to seek relief "from a final judgment, order, or proceeding for ... fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." "To succeed on a motion under RCFC 60(b)(3), the 'movant must demonstrate fraud, misrepresentation, or misconduct by clear and convincing evidence.'" *Wagstaff v. United States*, 118 Fed. Cl. 172, 176 (2014) (quoting *Madison Servs., Inc. v. United States*, 94 Fed. Cl. 501, 507 (2010)), *aff'd*, 595 F. App'x 975 (Fed. Cir. 2014).  Under this standard, "unsubstantiated innuendo and uncorroborated inferences" are not enough.  *Madison Servs.*, 94 Fed. Cl. at 507. The fraud, misrepresentation, or misconduct must have "prevented the movant from receiving a fair hearing or trial." *Griffin v. United States*, 96 Fed. Cl. 1, 9 (2010) (quoting *Madison Servs.*, 94 Fed. Cl. at 507).  To obtain relief, the movant "must provide a sufficient 'reason to believe that vacating the judgment will not be an empty exercise or a futile gesture.'" *Dobyns v. United States*, 915 F.3d 733, 738 (Fed. Cir. 2019) (quoting *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995)).  As explained herein, the alleged fraud did not prevent ASG from receiving a fair hearing.  Regardless of any fraud, which ASG has failed to show by clear and convincing evidence, the requirements of the task order could be interpreted as a matter of law by both this court and the Federal Circuit.  Vacating the earlier judgment would be futile, as the same legal result would attend any reconsideration of ASG's compliance with the task order.